DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Proposed Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Erica R. Aisner, Esq.
Julie C. Curley, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

                                                            Chapter 11

WATERBURY REALTY, LLC                      .         Case No. 16-11779(SCC)

                              Debtor.
-----------------------------------------------------------X

## DECLARATION OF DAVID HOLAND PURSUANT
## TO LOCAL BANKRUPTCY RULE 1007-2 IN SUPPORT
## OF DEBTOR'S CHAPTER 11 PETITION

DAVID HOLAND, being duly sworn, upon the penalties of perjury, hereby declares and states:

1.      I am the authorized member of Waterbury Realty, LLC (the "Debtor") and have continuously served in this role since I solely formed the LLC back in 2001 and acquired the Debtor's real property at that time. I am fully familiar with the Debtor's business affairs and operations, and am duly authorized to make this Declaration on the Debtor's behalf.

2.      I submit this affidavit (a) in support of the Debtor's petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), (b) to assist the Court and other interested parties in understanding the circumstances giving rise to the commencement of the Chapter 11 case, and (c) to provide general information about the Debtor's business operations.

3.      Part I of this Declaration provides an introduction to the Debtor and its Chapter 11 case and describes the circumstances giving rise to the commencement of the Chapter 11 case. Part II of this Declaration sets forth the information required by Local Bankruptcy Rule for the Southern District of New York ("Local Rule") 1007.

### I.   **Introduction**

4.      On June 20, 2016 (the "Filing Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.  Since the Filing Date, the Debtor has remained in possession of its assets and continued to manage its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.      The Debtor is a member managed limited liability company organized under Connecticut law. I solely formed and was the 100% member of the Debtor upon its organization in 2001, at which time the Debtor acquired for $850,000 through my own capital of $200,000 and seller financing of $650,000, a 13 acre commercial parcel of real property located at 730 North Main Street, Waterbury, Connecticut (the "Property").  I have managed the Debtor's business and business affairs from my office located at 2447 Third Avenue, Bronx, New York 10451. At the time of acquisition, the Property housed several commercial tenants. However, the rental income was insufficient to pay all of the operating expenses for the Property, and as such I initially continued to invest capital into the Property for the payment of real estate taxes and other necessary operating expenses. At the end of August 2001 until the beginning of November 2001, I invested an additional $100,000 in the Property. In addition, my son-in-law Moshe Altmark loaned the Debtor $50,000.

6.      Shortly after I formed the Debtor, in or about August 2001, I entered into a joint venture agreement with an individual named Salvatore Cascino ("Cascino"). Pursuant to the joint

venture agreement, I was induced into giving 50% of my membership interests in the Debtor to Cascino in material reliance upon his representation and promise to, *inter alia,* clean up the Property and provide labor at his cost, so that the Property could be rentable.. After purchasing the Property, Cascino continuously maintained a labor presence at the Property while I managed the books and records of the Property, receiving rents and paying all expenses including the mortgage and taxes. The buildings on the Property were in very bad shape and needed extensive clean up. That is why I agreed to give Sal 50% because he represented to and convinced me his expertise was cleaning up distressed industrial properties.

7.      From inception of our joint venture agreement, I made it clear to Cascino that my contribution to the Property would be limited to my original purchase plus whatever additional contributions I might later agree in my sole discretion to make.  Cascino promised that he would provide his construction expertise and labor and be on site regularly in order to rapidly clean up the Property so to be able to present it to prospective tenants.

8.       These obligations and commitments were to be the consideration for Casino's acquisition of the 50% interest in the Debtor as he paid me no money at the time he acquired it.

9.      During January of 2003, I learned that there was a fire at one of the buildings on the Property. I visited the property and saw Cascino and his workers salvaging the building without my knowledge and consent. This made me very depressed and sick. From that point on, Cascino totally disregarded my wishes for the Property.

10.     From inception until August 2004, my office maintained the books and records of the Debtor. It was Cascino's job to be on site regularly and physically manage the Property.

11.     During August of 2004, Cascino's representative came to my office and confiscated the books and records of the Debtor while I was sick at home and not coming into

work... After several years of management under Cascino, it became apparent that he was badly mishandling and mismanaging the Property as well as the affairs of the Debtor, including but not limited to failing to provide any accountings or distributions from the rental income form the Property.

12.    Compounding problems was Cascino's negligent handling of an environmental remediation in 2003 relating to existing old transformers on the Property whose existence long predated my acquisition of the Property.  Although the remediation originally would only cost approximately $20,000-30,000, Cascino mismanaged the overseeing of the remediation which led to substantial fines and penalties assessed by the US EPA. This would apparently repeat itself with other professionals and vendors of the Debtor, causing unnecessary lawsuits and costs directly attributable to Cascino's sheer unwillingness to pay for various services rendered in connection with the management of the Property.

13.    In addition, Cascino was apparently self-dealing throughout his tenure of management. For example, he apparently entered into a long term lease with one of his wholly owned entities without authorization from me after committing millions of dollars, booked as a "loan" to the Debtor by Cascino, for a build out of Cascino's owned tenant entity. I have no idea if Cascino ever demanded or collected rent from such entity, which, upon information and belief, continues to occupy the Property to this date.

14.    Cascino allegedly made unauthorized "loans" to the Debtor in the *millions of dollars* – allegedly for improvements to the Property but mischaracterized as "recourse" loans on the Debtor's books and tax returns which were prepared and/or filed under Casino's management.

15.    My concerns with Cascino's mismanagement, breach of fiduciary duty and self-dealing could no longer be tolerated, and in 2010 I commenced an action in New York Supreme Court, Nassau County, suing Cascino for fraud, breach of fiduciary duty and compensatory and punitive damages. The action has been long dragged out and although discovery was partially taken, I am still being kept in the dark about Cascino's operation of the Property and the affairs of the Debtor.

16.    In summary, I was fraudulently induced by Cascino into giving him a 50% membership interest in the Debtor, and I strongly believe he continues to mismanage and devalue the Property to the detriment of the Debtor's legitimate creditors and my equity interests, respectively.

17.    Apparently, I am not the only party who has been harmed by Mr. Cascino, as he is a known serial polluter (in 2012 Cascino entered into a plea for a Class E felony for filing a false instrument in connection illegal dumping), and his sordid past can be obtained through public information. My intention is to not further besmirch him herein; instead I wish to reclaim my property and interests so that I can mitigate my damages and losses directly attributable to his mismanagement and breaches of fiduciary duty to me.

18.    I therefore filed this Chapter 11 case in order to (a) obtain back control of the Debtor's affairs, (b) assess the totality of damages that Cascino has caused to the Property, creditors and myself, (c) investigate the conduct, activities and alleged self-dealings of Cascino vis a vis the Property and the Debtor, (d) restore the Property management and accountability of the Debtor in terms of fiscal responsibility, management and reporting, (e) embark on an aggressive marketing and sale campaign to sell and maximize the value of the Property and (f) finally adjudicate the Debtor's claims against Cascino and his alleged claims against the Debtor

so that the legitimate creditors and, hopefully, even myself, can recover and mitigate losses directly caused by Cascino's actions and misdeeds.

## II. <u>INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007</u>

19.    In addition to the foregoing, Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

**Local Rule 1007-2(a)(1)**

20.    The Debtor owns a 13 acre commercial parcel of real property in Waterbury, Connecticut with several known tenants located thereon.

**Local Rule 1007-2(a)(2)**

21.    This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u>").

**Local Rule 1007-2(a)(3)**

22.    Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

23.    A list of the names and addresses of each of the Debtor's 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in 11 U.S.C. Section 101(31) is annexed as **<u>Exhibit A.</u>**

**Local Rule 1007-2(a)(5)**

24.    A list of the names and addresses of the five largest secured creditors is annexed hereto as **<u>Exhibit B.</u>**

**Local Rule 1007-2(a)(6)**

25.    Upon information and belief, the Debtor does not have a recent balance sheet.

**Local Rule 1007-2(a)(7)**

26.     There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

27.     None of the Debtor's property is in the possession of any custodian, public officer,

mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-2(a)(9)**

28.     The Debtor does not lease any real property.

**Local Rule 1007-2(a)(10)**

29.     The Debtor's records are located at several locations, including 2447 Third

Avenue, Bronx, New York 10451 and, upon information and belief, with Salvatore Cascino at

801 Bartholdi Avenue, Bronx, New York, and 730 North Main Street, Waterbury, Connecticut.

The Debtor's assets consist primarily of the Property.

**Local Rule 1007-2(a)(11)**

30.     The following actions or proceedings are pending concerning the Debtor:

> *David Holand, Davesal Corp. derivatively by 50% shareholder David
> Holand and Waterbury Realty, LLV v. Salvatore Cascino*, Supreme Court,
> Nassau County, Index No. 21925/10

**Local Rule 1007-2(a)(12)**

31.     The senior management of the Debtor is David Holand, authorized member.

**Local Rule 1007-2(b)(1) and (2)**

32.     The estimated (non-insider) monthly payroll for the thirty (30) day period

following the Chapter 11 petition is currently unknown, subject to discovery of Salvatore

Cascino  to be taken  by the Debtor..

33.     The anticipated salary for the members is $0 for the same thirty (30) day period.

**Local Rule 1007-2(b)(3)**

34.    A monthly cash flow budge will be provided after further discovery of Salvatore

Cascino.

## <u>CONCLUSION</u>

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is

true and correct.

Dated: Bronx, New York
        June 24, 2016


                        _/s/ David Holand___
                        David Holand, Authorized Member

**EXHIBIT A**

**20 Largest Unsecured Creditors**

**To Be Provided**

## EXHIBIT B

### Five Largest Secured Creditors

*(estimated amounts)*

Great Brook Realty, Inc.                              $400,000